NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIA DIAMONTE,<br><br>*Plaintiff*,<br><br>v.<br><br>TAJA NIA HENDERSON; KINNA PERRY; GARY FARNEY; JACQUELINE MATTIS; RUTGERS, THE STATE UNIVERSITY OF NEW JERSEY; THE BOARD OF GOVERNORS OF RUTGERS, THE STATE OF NEW JERSEY; RUTGERS UNIVERSITY FOUNDATION OF THE STATE UNIVERSITY; JOHN DOE 1-100 (names being fictitious); JANE DOE 1-100 (names being fictitious), *individually and in their professional capacities*,<br><br>*Defendants*. | Civil No.: 2:23-cv-03596 (KSH) (SDA)<br><br><br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

**I.    Introduction**

Plaintiff Maria Diamonte has sued Rutgers University and a host of individual defendants, alleging various federal and state civil rights claims based on the university's decision not to grant her a further extension to complete her doctoral dissertation. Her amended complaint asserted thirteen claims, seven of which remain and are now before the Court on defendants' motion to dismiss.[1] The remaining claims allege violation of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 701 *et seq.* (Count Three); the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.* (Counts Four and Eleven), 42 U.S.C. § 1983 ("Section

---

[1] As discussed *infra*, plaintiff's counsel acknowledged at oral argument that the other counts have been waived.

1

1983") for violating an unspecified federal law (Count Five), Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Counts Eight and Thirteen), and the Equal Protection Clause of the federal constitution (Count Ten). For the reasons set forth below, the amended complaint will be dismissed in its entirety.

## II.     Background

The amended complaint (D.E. 15, Am. Compl.), alleges that Diamonte was a PhD candidate in the Division of Global Affairs ("DGA") at Rutgers University, Newark ("Rutgers"). As of July 2022, Diamonte was "trying to finish her dissertation to fulfill the final requirements for the PhD degree," having gotten a number of previous extensions to do so. (*Id.* ¶ 8; D.E. 34-3, Colao Dec., Ex. A (Diamonte Verified Complaint to DCR ("DCR Compl.")).)[2] According to defendants, she had been enrolled in the program for approximately 11.5 years, or 23 cumulative semesters. (D.E. 34-1, Defs.' Moving Br. at 2; D.E. 34-4, Colao Dec., Ex. B (Rutgers Response to DCR Complaint ("DCR Response")).) She claims Rutgers unlawfully denied her an extension of time to complete her dissertation and be awarded her degree. (Am. Compl. ¶ 1; D.E. 34-1, Defs.' Moving Br. at 2.) Specifically, Diamonte asserts Rutgers discriminated against her by denying the extension request based on her disabilities, which include "severe fatigue and migraines, autoimmune conditions, endocrine, and heart issues." (Am. Compl. ¶¶ 5, 11, 13, 30.)

---

[2] The contents of the DCR documents attached to defendants' motion to dismiss are permissibly considered at the motion to dismiss stage because they are integral to plaintiff's claims. *See Chugh v. Western Inventory Servs., Inc.*, 333 F. Supp. 2d 285, 289 (D.N.J. 2004) (Linares, J.) (considering DCR investigation documents attached to the defendant's motion to dismiss that were "incorporated into the pleadings by reference" and "integral to or upon which plaintiff's claim is based"); *S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.*, 698 F. Supp. 3d 766, 772 (3d Cir. 1999) (finding that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").

Well before this action was filed, Diamonte pursued relief by way of a verified complaint she filed with the New Jersey Division on Civil Rights ("DCR"), alleging violations of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-1 *et seq.* based on disparate treatment, failure to accommodate, and retaliation.  (DCR Compl. at 1-2.)  She alleged there that Rutgers did not require non-disabled students to apply for extensions of time, but did require her to apply because of her disability status.  (*Id.* at 2.)  On January 25, 2023, the DCR found no probable cause existed to credit the allegations in Diamonte's complaint and closed the file. (D.E. 34-5, Colao Dec., Ex. C ("DCR Decision").)

Within months, on June 6, 2023, Diamonte initiated this action, naming as defendants Rutgers and various individual defendants—graduate school deans Perry, Taja Nia Henderson, and DGA's department chair Gary Farney—as well as the Board of Governors of Rutgers.  (D.E. 1.)  On January 12, 2024, she filed the operative amended complaint adding as defendants Rutgers dean Jacqueline Mattis and Rutgers University Foundation of the State University. (D.E. 15.)  As noted earlier, Diamonte asserts claims for violation of the RA (Count Three), the ADA (Counts Four and Eleven), Section 1983 (Count Five), Title VII (Counts Eight and Thirteen), and the Equal Protection Clause (Count Ten).  The amended complaint also asserted claims for race discrimination under the NJLAD (Count One); failure to accommodate, also under the NJLAD (Count Two); negligent and/or intentional infliction of emotional distress (Count Six); disability discrimination under the NJLAD and ADA (Count Seven); violation of an unspecified federal law under 42 U.S.C. § 1981 (Count Nine); violation of free speech rights under the First Amendment (Count Ten); and breach of an unidentified contract (Count Twelve).

Defendants moved to dismiss all of the foregoing claims, arguing in pertinent part, that Counts Three, Four, and Eleven are barred by either the election of remedies provision contained

3

within the NJLAD or issue preclusion; that Counts Five and Ten fail to allege a viable legal theory or plausibly allege facts that would warrant relief; and that Counts Eight and Thirteen fail because plaintiff has not, and cannot, plead an employer/employee relationship with Rutgers, an essential element of those claims.  (D.E. 34-1, Defs.' Moving Br.)

Diamonte opposed, countering that the DCR's decision is "non-final" and has not been reviewed by a state court, which she contends must foreclose issue preclusion; that she was discriminated against based on her race; and that she was deprived of post-graduate employment positions, which, she posits, supports her Title VII claim.  (D.E. 45, Pl.'s Opp. Br.)  The Court heard oral argument on February 26, 2025.  In response to the Court's questions, plaintiff's counsel conceded that by not responding to defendants' arguments for dismissal of Counts One, Two, Six, Seven, Nine, Ten, and Twelve, plaintiff had waived those claims and that they would be dismissed.  As such, the Court will dismiss those claims and proceeds below to consider the substance of the remaining claims.  *See, e.g.*, *D.A. v. Finish Line, Inc.*, 2022 WL 7989391, at *2, *5 (D.N.J. Oct. 14, 2022) (Kugler, J.) ("[T]he failure to respond to a substantive argument to dismiss a count, when a party otherwise files opposition, results in a waiver of that count.").

### III.    Standard of Review

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  A pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  That pleading standard does not require "'detailed factual allegations,'

but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (noting that "a complaint must do more than allege the plaintiff's entitlement to relief," it must "show such an entitlement with its facts" (citing *Phillips*, 515 F.3d at 234-35)). A claim is "facially plausible" when "there is sufficient factual content to support a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *Hindermyer v. B. Braun Med. Inc.*, 419 F. Supp. 3d 809, 817 (D.N.J. 2019) (Wolfson, J.) (quoting *Iqbal*, 556 U.S. at 678). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (cleaned up) (quoting *Twombly*, 550 U.S. at 557). "[L]abels and conclusions" and "formulaic recitation[s] of the elements of a cause of action will not do," nor will "naked assertion[s] devoid of further factual enhancement." *Id.* (cleaned up) (quoting *Twombly*, 550 U.S. at 555, 557).

IV. Discussion

    A. **Counts Three, Four, and Eleven**

These three counts allege discrimination and retaliation under the ADA and RA. As defendants have persuasively argued, litigating these claims here is barred by Diamonte's election to bring her NJLAD claims to the New Jersey Division on Civil Rights for resolution there.

After Diamonte filed her verified complaint with the DCR in February 2021, Rutgers filed a detailed response (D.E. 34-4) describing its academic extension request process and Diamonte's interactions with Rutgers. On January 25, 2023, almost two years later, the DCR issued a decision that described its investigation—including that it received briefing by the parties, including exhibits D.E. 34-3 and D.E. 34-4; conducted interviews with Diamonte, Rutgers graduate school dean Kinna Perry, and DGA director Julia Schwenkenberg; and subpoenaed and reviewed documents relating to Rutgers policies, emails between Diamonte and Rutgers staff, student comparator records, and Diamonte's past accommodation requests[3]—and issued a finding of no probable cause. (DCR Decision at 1-3.)

The DCR "did not find sufficient evidence to support a reasonable suspicion that [Rutgers] subjected [Diamonte] to disparate treatment or engaged in reprisal." (*Id.*) Instead,

> the evidence demonstrated that all graduate students enrolled in one of [Rutgers'] degree programs who are about to exceed or had exceeded the maximum number of years of enrollment for their degree program, are required to submit an application for Extension of Time; regardless of a student's status as a person with a disability. **The evidence further revealed that [Diamonte] failed to complete the form in its entirety, as required and that despite being informed of the missing information, [Diamonte] repeatedly refused to supply the outstanding information**.

(*Id.* at 3 (emphasis added).) The decision advised that Diamonte could either file a motion for reconsideration or appeal to the Appellate Division. (*Id.*) Diamonte alleges she filed a motion for reconsideration that remains pending. (D.E. 45, Pl. Opp Br. at 5.)

---

[3] Diamonte has not disputed Rutgers' description of its academic extension policy and this history of Diamonte's extension requests. Specifically, Diamonte first secured an accommodation from Rutgers' Office of Disability Services in 2017. (D.E. 34-1, Defs.' Moving Br. at 2; D.E. 34-4, DCR Response at 4-6.) She then applied for, and was granted, a two-year extension to complete her dissertation. (D.E. 34-4, DCR Response at 5.) That extension lapsed in 2019, but she continued to matriculate during the COVID-19 pandemic. (*Id.* at 7.) In November 2020, Rutgers sent Diamonte an email requesting an updated academic extension application (*id.*), which began the basis for the DCR action, and eventually for this action.

6

1. **Election of Remedies**

The NJLAD permits a plaintiff alleging disability discrimination to either to file a verified complaint with the DCR or to sue in the New Jersey Superior Court. *See* N.J.S.A. § 10:5-13. But doing both is prohibited.

> [T]he procedure herein provided [under the NJLAD] shall, while pending, be exclusive; and the final determination therein **shall exclude any other action**, civil or criminal, **based on the same grievance of the individual concerned**.

N.J.S.A. § 10:5-27 (emphasis added). This election of remedies provision explicitly precludes pursuing any other judicial action based on the same grievance once a claimant has obtained a final determination from the DCR or the state court. *Pittman v. La Fontaine*, 756 F. Supp. 834, 842 (D.N.J. 1991) (Lechner, J.) (citing N.J.S.A. § 10:5-27); *Chugh*, 333 F. Supp. 2d at 290 ("[W]ith the exception of appellate review, an individual who has received a final determination by the DCR will be barred by N.J.S.A. § 10:5-27 from bringing any other action, in any forum, based on the same injury."). While a party to a DCR action "may appeal to the Appellate Division of the Superior Court under N.J.S.A. 10:5-21" after a DCR final determination, "once a claimant takes advantage of the administrative route which is swifter and less expensive than the alternative route of pursuing a claim in superior court, N.J.S.A. 10:5-27 prohibits other judicial remedies." *Pittman*, 756 F. Supp. at 842.

In the DCR, Diamonte alleged that she experienced disability discrimination and retaliation by the way Rutgers handled and ultimately denied her extension request, contrary to the NJLAD. (DCR Compl. at 1-2.) In this action, she alleges she experienced disability discrimination and retaliation by the handling of her extension request, contrary to the ADA and RA. (Am. Compl. ¶¶ 71-88, 134-141.) Diamonte's current factual allegations mirror those she

made in her complaint to the DCR. (*Compare* Am. Compl. ¶¶ 1-13 *with* DCR Compl. ¶¶ 1-15.)[4] Namely, she alleges that she applied for, and was denied, an academic extension in violation of anti-discrimination laws. (Am. Compl. ¶¶ 30-37.) And even to the extent Diamonte's federal complaint could be construed as expanding on her allegations, they cover the same time frame and events raised to the DCR. This scenario clearly implicates the NJLAD's election of remedies provision.

*Yuan Fang v. New Jersey*, which came to federal court on a similar procedural course, is instructive. There, the plaintiff had filed a complaint with the DCR, alleging discrimination and retaliation under the NJLAD. She thereafter sued in both state and federal court based on the same grievance. *Yuan Fang v. N.J.*, 2013 WL 3964514, at *1-2 (D.N.J. July 31, 2013) (Shipp, J.). The state court first dismissed its action because the NJLAD's election of remedies provision barred the plaintiff's state law claims. *Id.* Thereafter, the district court found that while the plaintiff's federal complaint added a count for violation of the Family Medical Leave Act, the complaint contained "essentially the same factual allegations as the amended complaint she filed in state court," and her additional factual allegations covering a different time period "substantially overlap, largely concern the time frame covered by her previous complaints, and simply expand on the exact same types of allegations raised before the DCR and the state courts." *Id.* at *4. The court dismissed the claims as precluded by the NJLAD's election of remedies provision.

Allowing Diamonte to pursue her ADA and RA discrimination claims in this forum would afford her "a second bite of the apple," a result that would violate the language and

---

[4] Although Diamonte filed her DCR complaint in 2021, the DCR did not reach its final decision until January 2023, before which time defendants allege that Diamonte "supplemented the record with allegations relating to her expulsion from the DGA program." (D.E. 47, at 14.)

rationale of N.J.S.A. § 10:5-27. *Chugh*, 333 F. Supp. 2d at 290 (quoting *Wilson v. Wal-Mart Stores*, 158 N.J. 263, 271 (1999)). Diamonte litigated her claims of unlawful discrimination before the DCR, she was accorded a full opportunity to do that, and the DCR found that it was Diamonte's failure to follow Rutgers' procedures for requesting a disability accommodation, not discrimination, that led to her extension request denial. Counts Three, Four, and Eleven are barred by N.J.S.A. § 10:5-27.

### 2. Issue Preclusion

Diamonte is also collaterally estopped from pursuing Counts Three, Four, and Eleven. Collateral estoppel, or issue preclusion, prevents parties from relitigating an issue that has previously been decided. *Pittman*, 756 F. Supp. at 841 (citing *McNasby v. Crown Cork & Seal Co.*, 888 F.2d 270, 275 n.7 (3d Cir. 1989)). It is appropriately applied when:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

*Strassman v. Essential Images*, 2018 WL 1251636, at *4 (D.N.J. Mar. 12, 2018) (McNulty, J.) (quoting *Allen v. V&A Bros., Inc.*, 208 N.J. 114, 137 (2011)).

Again, in Counts Three, Four, and Eleven, Diamonte asserts disparate treatment and retaliation under the ADA and RA. In these claims, Diamonte is challenging, based on the same constellation of factual allegations, the application of Rutgers' extension process to her; whether that application was discriminatory is an issue already resolved by the DCR. And disability discrimination claims under the NJLAD, Title II of the ADA, and Section 504 of the RA are analyzed the same way. *Chin v. Rutgers*, 2016 WL 2653908, at *5 (D.N.J. May 9, 2016) (Linares, J.), *aff'd*, 697 F. App'x 751 (3d Cir. 2017) ("The standards for determining a violation

of the RA and NJLAD are the same as those under the ADA."); *K.N. v. Gloucester City Bd. of Educ.*, 379 F. Supp. 3d 334, 345 (D.N.J. 2019) (Hillman, J.) ("[T]he standard under all three of these statutes requires [the plaintiff] to show he: '(1) has a disability; (2) was otherwise qualified to participate in a school program; and (3) was denied the benefits of the program or was otherwise subject to discrimination because of [his] disability.'" (quoting *Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009))).

The "actually litigated" requirement is also satisfied. "An issue is 'actually litigated' when it 'is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined.'" *Hecht v. E. Brunswick Bd. of Educ.*, 2019 WL 293234, at *4 (D.N.J. Jan. 23, 2019) (Sheridan, J.) (quoting *O'Leary v. Liberty Mut'l Ins. Inc.*, 923 F.2d 1062, 1066 (3d Cir. 1991)). This requirement also looks to whether the plaintiff had a "full and fair opportunity to litigate her claim" in front of the prior tribunal. *Pittman*, 756 F. Supp. at 845-46. The decision issued by DCR, the tribunal in which Diamonte chose first to pursue relief, reflects that she was afforded that opportunity. The decision reflects DCR's investigation into Diamonte's extension application and how Rutgers responded, and further reflects that it made that decision after having interviewed Diamonte and several others and reviewed the factual record generated by the parties. On that record, the DCR rejected Diamonte's version of events, concluding she had neither been treated disparately on the basis of disability nor retaliated against; to the contrary, all graduate students in her enrollment posture, disabled or not, were mandated to apply for an extension. Diamonte had simply not complied with the steps to secure an extension. (DCR Decision at 3.)

Next, the DCR's judgment was final, as the decision itself advised Diamonte. (*Id.* at 2 (advising that finding of "no probable cause" would be a final agency order appealable to

Appellate Division); *id.* at 3 (advising Diamonte that she could appeal or move for reconsideration)); *see also Hermann v. Fairleigh Dickinson Univ.*, 183 N.J. Super. 500, 503-04 (App. Div. 1982) ("The adverse [DCR] finding of no probable cause was a final appealable determination. Such a finding is a final order . . . and a final order of the Director of the Division is appealable to the Appellate Division."); *Bostanci v. N.J. City Univ.*, 476 F. App'x 499, 502-03 (3d Cir. 2012) (plaintiff estopped from bringing ADEA claims against defendants where DCR previously found no probable cause as to identical NJLAD claims).

"[F]or purposes of issue preclusion . . . 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991) (quoting *Restatement (Second) of Judgments* § 13 (1982)). "In determining whether the resolution was sufficiently firm, the second court should consider whether the parties were fully heard, whether a reasoned opinion was filed, and whether that decision could have been, or actually was, appealed." *Id.*

The finality of an administrative agency order is not undermined by the possibility of reconsideration because "[f]inality for purposes of issue preclusion is a more 'pliant' concept than it would be in other contexts." *Id.* (quoting *Dyndul v. Dyndul*, 620 F.2d 409, 412 (3d Cir. 1980)); *see EDP Med. Comput. Sys., Inc. v. U.S.*, 480 F.3d 621, 625-26 (2d Cir. 2007) ("[W]hether an order is final for appellate review purposes is not dispositive of its finality for *res judicata* purposes."); *Restatement (Second) of Judgments* § 13, cmt. f ("A judgment otherwise final for purposes of the law of res judicata is not deprived of such finality by the fact that . . . a party has made such a motion [to] render the judgment nonfinal.").

The Court easily finds that the DCR's no probable cause decision was a final judgment, decided after an extensive and fact-laden investigation in which Diamonte was fully heard. And

11

the law is clear: this finality is not undermined by Diamonte's pending motion for reconsideration in front of the DCR. *In re Brown*, 951 F.2d at 569; *Restatement (Second) of Judgments* § 13, cmt. f.

Next, the DCR's determination that Diamonte's discrimination and retaliation claims were unfounded was not just "essential to the prior judgment," it <u>was</u> the DCR's final judgment. *See Strassman*, 2018 WL 1251636, at *6. And finally, Diamonte—the party against whom the doctrine is asserted—was indisputably a party to the earlier DCR proceeding: she was the plaintiff. All five elements of issue preclusion have therefore been satisfied.

The only substantive argument that Diamonte musters against issue preclusion is an assertion that broadly, any administrative agency decision unreviewed by a state court cannot have preclusive effect. (D.E. 45, Pl.'s Opp. Br. at 5-6.) Although the unreviewed nature of an agency decision may, for certain types of claims, prevent that decision from having preclusive effect,[5] she has not pointed to any authority even suggesting that this is the case for claims asserted under the ADA and RA, and the Court has found none.

Because the preclusive effect of the DCR decision is not a curable deficiency, these claims must be dismissed with prejudice.

### B. Counts Five and Ten

Counts Five and Ten are both brought under 42 U.S.C. § 1983. Count Five alleges violation of Section 1983, but specifies no federal law that was purportedly contravened. Section 1983 is not an independent source of rights, but instead is a vehicle "for vindicating federal

---

[5] *See, e.g., Univ. of Tenn. v. Elliott*, 478 U.S. 788 (1986) (Title VII claim); *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991) (Age Discrimination in Employment Act claim); *Edmundson v. Borough of Kennett Square*, 4 F.3d 186 (3d Cir. 1993) (Section 1983 claim) *Chugh*, 333 F. Supp. 2d at 291-92 (Title VII claim); *Hecht*, 2019 WL 293234, at *4 (Section 1983 claim).

rights elsewhere conferred" by the federal constitution or statutes. *Williams v. Pa. Human Rels. Comm'n*, 870 F.3d 294, 297 (3d Cir. 2017) (quoting *Hildebrand v. Allegheny Cty.*, 757 F.3d 99, 104 (3d Cir. 2014)). Diamonte acknowledged this in her opposition (D.E. 45, Pl.'s Opp. at 9), but does not identify what federal right she was relying on for this count. At oral argument, her attorney cited Title VII, but "Title VII and ADA statutory rights cannot be vindicated through § 1983." *Williams*, 870 F.3d at 300 (citations omitted). There being no viable basis for this count, it will be dismissed with prejudice.

Count Ten asserts a claim for violation of the Fourteenth Amendment's Equal Protection Clause, citing alleged disability, race, gender, and national origin discrimination. This claim appears to be based on a "class of one" theory: "Equal protection claims can be brought by a 'class of one,' where the plaintiff alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Leone v. Twp. of Deptford*, 616 F. Supp. 2d 527, 536 (D.N.J. 2009) (Hillman, J.) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). To state such a claim, Diamonte must allege "(1) the defendant treated [her] differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Id.* (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006)).

Diamonte asserts she was treated differently from Sasha Taner, a former Rutgers student also enrolled in the DGA program for more than 10 years. (Am. Compl. ¶¶ 14-15.) Rutgers permitted Taner—who Diamonte alleges is not disabled—to complete and defend her dissertation and ultimately receive a PhD. (*Id.* ¶¶ 15-18.) In essence, Diamonte's class of one claim contemplates that she was denied an extension of time because of her disability status while a similarly situated, but non-disabled, student was granted an extension. (*Id.* ¶¶ 18-25.)

13

This is the same argument that Diamonte raised in front of the DCR, and the DCR's factfinding on the issue is entitled to preclusive effect. *See Edmundson*, 4 F.3d at 192 (holding that in the Section 1983 context, an administrative agency's factual (as opposed to its legal) findings are entitled to preclusive effect—even when unreviewed by a state court). And the DCR found, as discussed earlier, that Diamonte was denied an extension not because of her disabilities, but because she "failed to complete the [requisite] form in its entirety . . . and . . . despite being informed of the missing information, [she] repeatedly refused to supply the outstanding information." (DCR Decision at 3.) The Court finds that the DCR's factfinding defeats her discrimination claims in this count.

Diamonte also asserted in the amended complaint that she experienced reverse race discrimination because she is white and several individual defendants are black. (Am. Compl. ¶¶ 38, 40-41, 62.) This is insufficient to make out a cause of action, as she has not alleged any consequent differential treatment. *Abdullah v. Small Bus. Banking Dep't of Bank of Am.*, 532 F. App'x 89, 91 (3d Cir. 2013) ("That the plaintiff and defendant are different races is not sufficient to plausibly state a claim of racial discrimination."); *Iqbal*, 556 U.S. at 680-81 (finding that the plaintiff's assertions that he was discriminated against "solely on account of [his] religion, race, and/or national origin" were "conclusory and not entitled to be assumed true" (citing *Twombly*, 550 U.S. at 554-55)). Similarly, her contention that unnamed Rutgers faculty, not defendants in this action, called her "stupid multiple times in the student lounge and during meetings with other faculty" (Am. Compl. ¶ 156), does not make out an equal protection claim against the defendants named in this action.

At oral argument, Diamonte's attorney tried a different tack, stating that these claims rested on an employer-employee relationship between Rutgers and Diamonte. As discussed

14

*infra*, Diamonte has alleged no such relationship.  And even if she did, equal protection "class of one" claims cannot be asserted by a public employee.  *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 609 (2008).

Diamonte has had numerous opportunities to supplement or clarify her allegations both in front of the DCR and in front of this Court.  Diamonte's failure to do so leads the Court to conclude that she cannot cure her factual deficiencies.  The Court dismisses Counts Five and Ten with prejudice, as amendment would be futile.  *See Perano v. Twp. of Tilden*, 423 F. App'x 234, 239 (3d Cir. 2011).

C.  **Counts Eight and Thirteen**

Counts Eight and Thirteen assert Title VII violations.

Title VII prohibits an "employer" from "discriminat[ing] against any individual . . . because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  To bring a Title VII claim, a plaintiff "must allege an employment relationship with the defendants."  *A.S. v. Ocean Cnty. Fire Acad.*, 2024 WL 184564, at *4 (D.N.J. Jan. 17, 2024) (Castner, J.) (quoting *Covington v. Int'l Ass'n of Approved Basketball Offs.*, 710 F.3d 114, 119 (3d Cir. 2013)).

Diamonte has not, at any time, alleged an employment relationship with defendants; to the contrary, she specifically alleges that she was a student:  "a PhD candidate in the division of Global Affairs (DGA) at Rutgers University, Newark."  (Am. Compl. ¶¶ 1, 8, 38.)  At oral argument, counsel suggested that Diamonte had unspecified "opportunities" and "promises" of employment after she graduated.  There was no explanation of how these alleged opportunities

would retroactively constitute the requisite employment relationship with any of the defendants,[6] and counsel's representation cannot salvage these claims. Diamonte has nowhere indicated facts suggesting that amendment would be anything but futile, and these counts are therefore dismissed with prejudice. *David v. Neumann Univ.*, 177 F. Supp. 3d 920, 930 (E.D. Pa. 2016) (dismissing the plaintiff's Title VII claims with prejudice where she merely alleged she was a graduate student at the University); *Fields v. Colgate Palmolive Co.*, 2010 WL 5252537, at *4-5 (D.N.J. Dec. 15, 2010) (Sheridan, J.) (dismissing the plaintiff's hostile work environment claim because the plaintiff never worked as an employee of the defendant).

## V.     Conclusion

For the reasons set forth above, defendants' motion to dismiss is granted. An appropriate order accompanies this opinion.

Dated: April 3, 2025                                         /s Katharine S. Hayden
                                                             Katharine S. Hayden, U.S.D.J.

---

[6] To the extent the amended complaint can be construed as making these allegations against the individual defendants, individual employees cannot be liable under Title VII. *See Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996).